RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 82760
lcruss@raklaw.com
Eric B. Carlson State Bar No. 193401
ecarlson@raklaw.com
Robert E. Satterthwaite, State Bar No. 223767
rsatterthwaite@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
T: (310) 826-7474 F: (310) 826-6991

BANKS & WATSON
James J. Banks, State Bar No. 119525
jjb@bw-firm.com
Stephen E. Paffrath, State Bar No. 195932
spaffrath@bw-firm.com
Hall of Justice Building
813 6th Street, Suite 400
Sacramento, CA 95814-2403
T: (916) 325-1000 F: (916) 325-1004

Attorneys for Plaintiffs Proven Methods
Seminars, LLC and Proven Methods Customer
Service, LLC, doing business together as
National Grants Conferences

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROVEN METHODS SEMINARS, LLC, a Nevada limited liability company; and, PROVEN METHODS CUSTOMER SERVICE, LLC, a Nevada limited liability company, doing business together as NATIONAL GRANTS CONFERENCES,<br><br>Plaintiffs,<br><br>vs.<br><br>DYNETECH CORPORATION, a Florida Corporation; TELLIGENIX CORPORATION, a Florida corporation; and BUSINESS SKILLS CORPORATION, a Florida corporation,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br>1. **COPYRIGHT INFRINGEMENT, (17 U.S.C. § 101 et seq.);**<br>2. **FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114 et seq.);**<br>3. **UNFAIR COMPETITION/ FALSE ADVERTISING (15 U.S.C. § 1125(a)(1));**<br>4. **UNFAIR COMPETITION/ LIKELIHOOD OF CONFUSION (15 U.S.C. § 1125(a)(1));**<br>5. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>6. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>7. **CONVERSION;**<br>8. **THEFT OF TRADE SECRETS;**<br>9. **UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200 et seq.); AND**<br>10. **CONSPIRACY AND AIDING AND ABETTING** |

2858-01 080403 ComplaintDynetech.doc

RUSS, AUGUST & KABAT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(INJUNCTIVE RELIEF SOUGHT)**

**JURY TRIAL DEMANDED**

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1    Plaintiffs Proven Methods Seminars, LLC and Proven Methods Customer Service, LLC,

2   doing business together as National Grants Conferences (collectively referred to as "National

3   Grants"), for their Complaint against Defendants Dynetech Corporation, Telligenix Corporation,

4   and Business Skills Corporation (collectively, "Defendants"), state as follows:

5                            **Jurisdiction And Venue**

6    1.    National Grants' first cause of action arises under the Federal Copyright Act (17

7   U.S.C. § 101 *et seq.*) This Court has jurisdiction over this cause of action pursuant to 28 U.S.C.

8   §§ 1331 and 1338. National Grants has registered copyrights in the following works:

9    • "Cashing in on Government Grants, Loans and Subsidies, Volume I" (Registration

10      Number TX 6-457-610);

11   • "Cashing in on Government Grants, Loans and Subsidies, Volume II" (Registration

12      Number TX 6-457-611);

13   • "The Complete Directory and Cross Reference to Federal, State and Local Grants,

14      Loans and Subsidies, State of New York – City of New York, Volume I"

15      (Registration Number TX 6-457-617);

16   • "The Complete Directory and Cross Reference to Federal, State and Local Grants,

17      Loans and Subsidies, State of New York – City of New York, Volume II"

18      (Registration Number TX 6-457-618);

19   • "The Complete Directory and Cross Reference to Federal, State and Local Grants,

20      Loans and Subsidies, State of California – City of Los Angeles, Volume I"

21      (Registration Number TX 6-457-621);

22   • "The Complete Directory and Cross Reference to Federal, State and Local Grants,

23      Loans and Subsidies, State of California – City of Los Angeles, Volume II"

24      (Registration Number TX 6-457-622);

25   • "The Complete Directory and Cross Reference to Federal, State and Local Grants,

26      Loans and Subsidies, State of Nevada – City of Las Vegas" (Registration Number TX

27      6-457-620);

28

2858-01 080403 ComplaintDynetech.doc          1

COMPLAINT

1        •   "The Complete Directory and Cross Reference to Federal, State and Local Grants,

2             Loans and Subsidies, State of Louisiana – Cities of New Orleans, Lafayette, & Baton

3             Rouge" (Registration Number TX 6-457-623);

4        •   "The Complete Directory and Cross Reference to Federal, State and Local Grants,

5             Loans and Subsidies, State of New Jersey – City of Newark" (Registration Number

6             TX 6-457-619);

7        •   "'Summary of Services' for Members"  (Registration Number TX 6-457-624);

8        •   "Grant Presentation 1-30-02" (Registration Number TX 1-325-401);

9        •   "Grant Presentation 10-16-2000" (Registration Number TX 1-325-402); and the

10       •   "Grant Presentation 2-25-02" (Registration Number TX 1-325-400)

11      2.     National Grants' second through fourth causes of action arise under the

12 Trademark Act of 1946 (the Lanham Act), as amended by the Federal Trademark Dilution Act of

13 1995 (15 U.S.C. §§ 1051 *et seq.*).  This Court has jurisdiction over these causes of action

14 pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.  This Court has supplemental

15 jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

16      3.     National Grants is informed and believes that venue is proper in this Court under

17 28 U.S.C. § 1391 because Defendants transact affairs in this district and because a substantial

18 part of the events giving rise to the claims asserted arose in this district.

19                           **The Parties**

20      4.     Plaintiff Proven Methods Seminars, LLC is a Nevada limited liability company

21 formed on March 10, 1998, with its principal place of business at 2385 Executive Center Dr.,

22 #290, Boca Raton, Palm Beach County, Florida.  Proven Methods Seminars, LLC's commonly

23 owned support affiliate, Proven Methods Customer Service, LLC, is also a Nevada limited

24 liability company that was formed on November 3, 1998, with its principal place of business at

25 803 West Avenue, Rochester, New York.  Proven Methods Seminars, LLC and Proven Methods

26 Customer Service, LLC have been doing business together as National Grants since their

27 formation.

28

RUSS, AUGUST & KABAT

1    5.    In 1998, National Grants created, and has since been the owner and operator of, a

2    unique system for the offer for sale, sale, facilitation and fulfillment of financial education

3    seminars, courses, and training events, including without limitation various proprietary written

4    training and reference materials, programs, products, and services.  National Grants has done

5    substantial business in this district.

6    6.    Since its inception in 1998, National Grants' core product has been the nationally

7    advertised and promoted *National Grants Conferences*® program, which is a membership

8    package offered for sale following the delivery of a free two-hour introductory seminar on how

9    to access the government grant, loan and subsidy system.  Potential customers learn about

10    National Grants' introductory seminars through National Grants' direct marketing/mailings, its

11    infomercial and newspaper advertisements.  On average, National Grants has conducted these

12    introductory seminars weekly in four to six venues nationwide, for periods of three to five days,

13    conducting two sessions per day, for nearly ten years.  At the conclusion of the free introductory

14    seminar, attendees are given the opportunity to purchase the National Grants Membership

15    package, which includes admission to a two-day follow-up training session and various member

16    support services.

17    7.    National Grants' personnel engaged in providing these seminars include its

18    Speakers (who orally present the grant-related information at the seminars) and its Road Crew

19    (who assist in the production and presentation of National Grants seminars by facilitating sales

20    and performing various operational tasks and duties, including cash handling and merchant

21    account processing, data entry, inventory control, room configuration and staging, sound system

22    installation and break-down, attendee seating, Speaker support, and other logistical functions).

23    8.    American Grants & Affordable Housing Institute, LLC ("American Grants") is a

24    Texas limited liability company formed on May 15, 2007.  Upon information and belief,

25    American Grants is an entity used by Defendants to utilize National Grants' misappropriated

26    confidential and proprietary information, including without limitation its training and sales

27    methods and materials, as well as its operational data, systems and methodologies, and to

28    interfere with National Grants' business and economic relationships with its customers, vendors

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1    and personnel. National Grants filed a lawsuit against American Grants and various affiliated
2    entities and individuals in this Court on August 3, 2007, *Case No. 2:07-CV-01588 WBS-EFB*. A
3    true and correct copy of the First Amended Complaint in *Case No. 2:07-CV-01588* is attached
4    hereto as Exhibit A.

5        9.    Defendant Dynetech Corporation ("Dynetech") is incorporated in Florida with its
6    principal place of business in Orlando, Florida. Upon information and belief, Dynetech is an
7    entity utilized to manage and control American Grants and Bruce West ("West") for the purpose
8    of utilizing National Grants' misappropriated confidential and proprietary information, including
9    without limitation its training and sales methods and materials, as well as its operational data,
10   systems and methodologies, and to interfere with National Grants' business and economic
11   relationships with its customers, vendors and personnel. Upon information and belief, Dynetech
12   has assumed the position of successor in interest to American Grants, including the liabilities
13   thereof. Upon information and belief, Dynetech has engaged in substantial business activities in
14   this district.

15       10.   Defendant Telligenix Corporation ("Telligenix") is incorporated in Florida with
16   its principal place of business in Orlando, Florida. Upon information and belief, Telligenix is a
17   subsidiary of Dynetech, and is utilized to manage and control American Grants and West for the
18   purpose of utilizing National Grants' misappropriated confidential and proprietary information,
19   including without limitation its training and sales methods and materials, as well as its
20   operational data, systems and methodologies, and to interfere with National Grants' business and
21   economic relationships with its customers, vendors and personnel. Upon information and belief,
22   Telligenix has assumed the position of successor in interest to American Grants, including the
23   liabilities thereof. Upon information and belief, Telligenix has engaged in substantial business
24   activities in this district.

25       11.   Defendant Business Skills Corporation ("Business Skills") is incorporated in
26   Florida with its principal place of business in Orlando, Florida. On or about November 1, 2007,
27   Business Skills entered into a operation and management agreement ("Enterprise Management
28   Agreement") with American Grants and West whereby Business Skills Corporation agreed to,

2858-01 080403 ComplaintDynetech.doc          4

RUSS, AUGUST & KABAT

1   and since has, managed and controlled American Grants and West for the purpose of causing

2   American Grants and West to utilize National Grants' misappropriated confidential and

3   proprietary information, including without limitation its training and sales methods and

4   materials, as well as its operational data, systems and methodologies, and to interfere with

5   National Grants' business and economic relationships with its customers, vendors and personnel.

6   On information and belief, Business Skills has assumed the position of successor in interest to

7   American Grants, including the liabilities thereof.  Upon information and belief, Business Skills

8   has engaged in substantial business activities in this district.

9       12.    Upon information and belief, West is an individual who is both the Founder and

10  Manager of American Grants.

11       13.    In addition to the direct misappropriation of National Grants' written training and

12  reference materials, Defendants have caused to be created and have then maintained a nearly

13  identical business model and methodology.  For example, Defendants have been able to produce

14  an infomercial that is remarkably similar to National Grants' infomercial in terms of format,

15  style, content, context and in the use of catch phrases.

16                   **Facts Common to All Claims**

17       14.    A significant portion of National Grants' revenue is derived from sales generated

18  through workshops and seminars conducted by its Speakers – individuals engaged and trained by

19  National Grants to conduct presentations before groups of attendees designed to motivate those

20  attendees to purchase National Grants "membership" products and services related to the subject

21  matter of the presentation.  National Grants' membership products and services include without

22  limitation extensive written reference materials and a two-day training workshop on how to

23  access the federal, state and local government grant, loan and subsidy system.

24       15.    National Grants carefully trains each of its Speakers, utilizing National Grants'

25  own unique and proprietary methodology, copyrighted materials, trade secrets, confidential

26  information, knowledge, and know-how.

27       16.    Specifically, National Grants provides each new Speaker with training materials

28  including the following:  (i) one or more samples of written transcripts of an actual 2-hour sales

1   presentation, chosen for their effectiveness; (ii) one or more audio recordings of same; and (iii)

2   one or more PowerPoint presentations that accompany the delivery of the sales presentation.

3   National Grants' training materials are distributed with warnings against misuse of the

4   confidential and proprietary data being shared.    The entire training process, along with the

5   ongoing monitoring of Speaker presentations, is supervised and conducted by National Grants'

6   Legal Department.

7        17.    Prior to their engagement and extensive training, National Grants' Speakers

8   typically have no knowledge of, or basis for delivering, the information contained in National

9   Grants' 2-hour sales presentation, *i.e.*, how to access the federal, state and local government

10  grant, loan and subsidy system.    Nor do any of National Grants' Speakers typically have any

11  experience delivering an effective sales presentation designed to motivate attendees to purchase a

12  membership program providing products and services to assist them in accessing the government

13  funding system.    Thus, as a result of the training and guidance provided to them by National

14  Grants, each of National Grants' Speakers acquires valuable new and/or enhanced skills and

15  knowledge.

16       18.    National Grants also provides extensive training to its Road Crew -- National

17  Grants personnel that accompany the Speakers to assist in conducting workshops and seminars in

18  the market.    National Grants' Road Crew training includes without limitation extensive sales

19  training, cash handling procedures, merchant account processing, and room and/or sound

20  configuration.

21       19.    At its two-day training workshops, National Grants provides its members with

22  various products and services, including but not limited to extensive written reference materials,

23  all as provided in its one-page "'Summary of Services' for Members."

24       20.    National Grants' reference materials include without limitation "Cashing in on

25  Government Grants, Loans and Subsidies, Volume I" (a workbook filled with valuable

26  information pertaining to the government grant, loan and subsidy system and real estate

27  investing), "Cashing in on Government Grants, Loans and Subsidies, Volume II" (a workbook

28  filled with valuable information pertaining to business ventures and the application process for

RUSS, AUGUST & KABAT

2858-01 080403 ComplaintDynetech.doc

6

COMPLAINT

1  governmental programs), "The Index Directory of Federal Domestic Assistance Programs" (a

2  directory containing information about hundreds of Federal assistance programs including the

3  agencies that administer them), and "The Complete Directory and Cross Reference to Federal,

4  State and Local Grants, Loans and Subsidies" for regional markets (National Grants has

5  researched and assembled over 140 regional market directories of the current assistance

6  programs offered by local governmental agencies).

7       21.    National Grants' members also receive six (6) months of "Member Support"

8  services, consisting of customer support, telephonic consulting services and members-only

9  website access. Members also may renew their support services thereafter for $24.95/month, and

10  may purchase any additional regional "Cross Reference" directories, all as spelled out in

11  National Grants' "'Summary of Services' for Members."

12       22.    National Grants' training materials, workshops, seminars, programs, presentations

13  and reference materials are the result of over nine years and millions of dollars spent on

14  independent research by National Grants, the relationships and contacts National Grants has

15  developed with various government agencies over the years, extensive review of government

16  websites, etc.    These training materials, workshops, seminars, programs, presentations and

17  reference materials are constantly updated and revised by National Grants, and have developed

18  and evolved over time. The selection of the locations and the timing of such seminars, programs,

19  and presentation are also the result of extensive research and development, and have evolved

20  over time.

21       23.    National Grants' training materials, workshops, seminars, programs, presentations

22  and reference materials were all created as original works of authorship, as National Grants both

23  selected and arranged their content.  In particular, National Grants' selection of the facts for

24  inclusion as well as the arrangement of those facts in its written training and reference materials

25  are independently copyrightable.  Accordingly, National Grants' training materials, workshops,

26  seminars, programs, presentations and reference materials are proprietary and highly valuable to

27  National Grants, and are copyrighted as discussed above in Paragraph 1.

28

RUSS, AUGUST & KABAT

1       24.     National Grants has devised a series of processes, formulae, and materials that it

2    utilizes in deciding when and where to hold its seminars and how best to advertise these events

3    to the public.  National Grants' processes, formulae, and materials in this regard are the core of

4    National Grants' business, and provide National Grants with a competitive advantage.  National

5    Grants' processes, formulae, and materials are not generally known to, nor are they reasonably

6    available to, National Grants' competitors, or the public at large.  Accordingly, these processes,

7    formulae, and materials constitute trade secrets.

8       25.     In an effort to protect its copyrights and trade secrets, National Grants requires its

9    Speakers, Road Crew and other personnel to agree to maintain as confidential and to protect all

10    of National Grants' "Proprietary Marks, Trade Names, Copyrighted Materials and Trade

11    Secrets," as well as all "confidential information, knowledge or know-how concerning the

12    operation, products, services, procedures, polices, or customers" of National Grants.

13       26.     National Grants' agreements with its personnel also include restrictions whereby

14    individuals are prohibited from using any of National Grants' "products, materials, teaching aids,

15    Confidential Information or property . . . in any competitive manner" for two years after

16    termination of their employment with National Grants.  National Grants personnel must also

17    acknowledge the "immediate and irreparable injury" to National Grants, and consent "to entry of

18    an injunction, without the need to post a bond, prohibiting any conduct . . . in violation of [the]

19    Agreement."

20       27.     Causing breach of their confidentiality agreements with, and duties and

21    obligations to, National Grants, Defendants have misappropriated and utilized National Grants'

22    "confidential information, knowledge or know-how concerning the operation, products, services,

23    procedures, polices, or customers" of National Grants in their work with National Grants' direct

24    competitor, defendant American Grants.

25       28.     Defendants have devised an unlawful conspiracy, plan and scheme to (i)

26    misappropriate National Grants' confidential and copyrighted information, methods and

27    materials and (ii) solicit National Grants' Speakers and other personnel, all with the sole intent

28    and purpose of utilizing National Grants' confidential and copyrighted information, methods and

RUSS, AUGUST & KABAT

1   materials, as well as National Grants' personnel, in Defendants' own unfairly competitive

2   government funding seminar business.

3       29.    In furtherance of their unlawful conspiracy, plan and scheme, Defendants

4   intentionally chose to do business as "American Grants," a name confusingly similar to

5   "National Grants," a registered trademark, hoping to benefit from consumer confusion. Such

6   confusion has in fact already occurred in the marketplace. Defendants are thus guilty of

7   trademark infringement and unfair competition, all as more fully set forth below.

8       30.    In furtherance of their unlawful conspiracy, plan and scheme, Defendants

9   intentionally misappropriated, and have effectively duplicated, National Grants' training

10  materials, methods, workshops, seminars, programs, presentations and reference materials –

11  effectively their entire business, which took millions of dollars and nine years to develop and

12  refine.

13      31.    Defendants' conversion, misappropriation and theft of National Grants'

14  proprietary information, including without limitation its presentations and reference and other

15  materials, has substantially reduced American Grants' time to market and cost to market, as

16  Defendants have not had to incur the millions of dollars of substantial research, development,

17  selection, ordering, arranging, organization, update and revision costs National Grants has

18  incurred in developing its business over the past ten years. Defendants are thus guilty of

19  copyright infringement and unfair competition, all as more fully set forth below.

20      32.    Defendants' theft of National Grants' processes, formulae, and materials

21  constitutes theft of trade secrets, all as more fully set forth below.

22      33.    In furtherance of their unlawful conspiracy, plan and scheme, Defendants

23  knowingly solicited National Grants' Speakers and other personnel to breach their confidentiality

24  agreements with, and or duties or obligations to, National Grants. As a result, some National

25  Grants personnel did in fact terminate their relationship with National Grants and begin working

26  with Defendants, utilizing National Grants' confidential information, knowledge and know-how.

27  The former National Grants personnel that were successfully solicited by Defendants have failed

28  to adhere to their confidentiality agreements with, and duties and obligations to, National Grants.

RUSS, AUGUST & KABAT

1     34.    In furtherance of their unlawful conspiracy, plan and scheme, Defendants have

2     broadcast at least two generations of infomercials containing false, fraudulent and misleading

3     testimonials, leaving consumers with the false impression that American Grants (i) has been in

4     business for a long time, and (ii) that the people giving the testimonials were actual participants

5     in American Grant's programs, when in fact American Grants was only formed in May 2007,

6     and at the time the first infomercial was created and aired, had conducted no seminars and had no

7     customers.  Defendants are thus guilty of false and deceptive advertising, all as more fully set

8     forth below, as well as unfair competition in copying the content, context and catch phrases of

9     National Grants' infomercial.

10     35.    Given the substantial and irreparable damage National Grants has suffered, and

11     will continue to suffer should Defendants' wrongful misappropriation, infringement, intentional

12     interference with National Grants' business relationships and other wrongful acts continue

13     unabated, National Grants has no adequate remedy at law, and thus herein seeks temporary,

14     preliminary and permanent injunctive relief.  National Grants has sustained and will continue to

15     sustain damages as a result of Defendants' wrongful conduct, the exact amount of which is

16     difficult to calculate, and presently unknown, but will be established according to proof at trial.

**FIRST CAUSE OF ACTION: COPYRIGHT INFRINGEMENT**

**(17 U.S.C. § 101 *et seq.*) (Against All Defendants)**

19     36.    National Grants realleges and incorporates by reference each of the allegations

20     contained in paragraphs 1 through 35 above as though fully set forth herein.

21     37.    National Grants is the owner of valid copyrights in several original works,

22     including without limitation:  Cashing in on Government Grants, Loans and Subsidies, Volume

23     I; Cashing in on Government Grants, Loans and Subsidies, Volume II; The Complete Directory

24     and Cross Reference to Federal, State and Local Grants, Loans and Subsidies for over

25     140 regional markets; The National Grants Conferences "'Summary of Services' for Members";

26     the website www.NationalGrants.com, and resources posted on the National Grants "Members

27     Only" website; National Grants' televised infomercial; National Grants' Introductory Conference

28     Presentation (written script, audio recording, PowerPoint, and handouts); National Grants' 2-Day

RUSS, AUGUST & KABAT

2858-01 080403 ComplaintDynetech.doc          10

COMPLAINT

1    Workshop Presentation (DVD recording of 2-day presentation, Power Point, and handouts), and

2    various speakers' presentations.

3        38.    Defendants have copied numerous original elements of these copyrighted works,

4    including without limitation the selection of material for inclusion in these works, and the

5    ordering, arrangement, and organization of the material therein.

6        39.    As a result of their misappropriation and infringement, Defendants have

7    substantially reduced American Grants' time to market and cost to market, as Defendants have

8    not had to incur the millions of dollars of substantial research, development, selection, ordering,

9    arranging, organization, update and revision costs National Grants has incurred in developing its

10   business over the past nine years.

11       40.    Defendants' acts of copyright infringement entitle National Grants to injunctive

12   relief, impounding of Defendants' infringing materials, disgorgement of Defendants' profits, as

13   well as National Grants' actual damages, any statutory damages that may apply, and an award of

14   attorneys' fees pursuant to 17 U.S.C. §§ 502-505.

15   **SECOND CAUSE OF ACTION:  FEDERAL TRADEMARK INFRINGEMENT (15**

16   **U.S.C. §§ 1114-1117, 1125(a)) (Against All Defendants)**

17       41.    National Grants realleges and incorporates by reference each of the allegations

18   contained in paragraphs 1 through 40 above as though fully set forth herein.

19       42.    National Grants began use of the trademark "National Grants Conferences" on or

20   about April 1998 as a trademark for its seminar products and services.  "National Grants

21   Conferences" was originally registered with the United States Patent and Trademark Office on

22   May 21, 2002.

23       43.    Defendants began to use the name "American Grants" well after that date, in areas

24   where National Grants was and is selling and promoting its products and services, including

25   without limitation in or near Sacramento, California.

26       44.    Defendants' use of the name "American Grants" was without consent of National

27   Grants.

28

RUSS, AUGUST & KABAT

45.    National Grants' "National Grants Conferences" trademark is inherently distinctive, and irrespective of its inherent distinctiveness, has acquired secondary meaning.

46.    Defendants' "American Grants" name is so similar in appearance to National Grants' trademark that its use is likely to cause confusion, and has already caused confusion, among ordinary vendors and consumers as to the source of those products and services.

47.    As a direct and proximate result of Defendants' infringing activities, National Grants has suffered, and will continue to suffer, substantial damage, the exact amount of which is difficult to calculate, and presently unknown, but will be established according to proof at trial.

48.    Defendants' infringement of National Grants' trademark as alleged herein is an exceptional case in that it was intentionally misleading and designed to capitalize on the goodwill associated with National Grants' trademark, entitling National Grants to injunctive relief, disgorgement of Defendant's profits, treble National Grants' actual damages and an award of attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and 1117(b).

**THIRD CAUSE OF ACTION: UNFAIR COMPETITION -- FALSE ADVERTISING**

**(15 U.S.C. § 1125(a)(1)) (Against All Defendants)**

49.    National Grants realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 48 above as though fully set forth herein.

50.    Defendants made a false and misleading description of facts in connection with its products and services in a commercial advertisement/promotion.  In particular, Defendants have broadcast infomercials containing false, fraudulent and misleading testimonials, leaving consumers with the false impression that American Grants (i) had been in business for a long time, when it had only been in business for a few months, and (ii) that the people giving the testimonials were actual participants in American Grants' programs.  Defendants have also intentionally scheduled their seminars, programs, and presentations in the same venues, and at the same times, as those scheduled by National Grants, in an effort to confuse customers and palm off the good will associated with National Grants.

51.    The use of the false and misleading description of facts misrepresented the nature, characteristics, and qualities of Defendants' services.

52.     National Grants has been and is likely to be damaged by the misrepresentations.

53.     Defendants' unfair competition as alleged herein is an exceptional case in that it was intentionally misleading and designed to capitalize on the goodwill associated with National Grants' products and services, entitling National Grants to injunctive relief, disgorgement of Defendants' profits, treble National Grants' actual damages and an award of attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and 1117(b).

**FOURTH CAUSE OF ACTION:  UNFAIR COMPETITION -- LIKELIHOOD OF**

**CONFUSION -- FALSE OR MISLEADING REPRESENTATION (15 U.S.C. § 1125(a)(1))**

**(Against All Defendants)**

54.     National Grants realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 53 above as though fully set forth herein.

55.     Defendants used in commerce a false and misleading representation of fact in connection with their products and services.   In particular, Defendants have broadcast infomercials containing false, fraudulent and misleading testimonials, leaving consumers with the false impressions that (i) American Grants had been in business for a long time, when it had only been in business for a few months, and (ii) the people giving the testimonials were actual participants in American Grants' programs.

56.     The use of the false and misleading descriptions of fact are likely to cause confusion and deceive as to the connection of Defendants with the individuals claiming to endorse their services.

57.     National Grants has been and is likely to be damaged by the actions of Defendants.

58.     Defendants' unfair competition as alleged herein is an exceptional case in that it was intentionally misleading, entitling National Grants to injunctive relief, disgorgement of Defendants' profits, treble National Grants' actual damages and an award of attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and 1117(b).

**FIFTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH**

**CONTRACTUAL RELATIONS (Against All Defendants)**

RUSS, AUGUST & KABAT

59.    National Grants realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 58 above as though fully set forth herein.

60.    National Grants requires its Speakers, Road Crew and other personnel to agree to maintain as confidential any information regarding National Grants' "Proprietary Marks, Trade Names, Copyrighted Materials and Trade Secrets," as well as all "confidential information, knowledge or know-how concerning the operation, products, services, procedures, polices, or customers" of National Grants.

61.    National Grants' agreements with its personnel also include restrictions whereby individuals are prohibited from using any of National Grants' "products, materials, teaching aids, Confidential Information or property . . . in any competitive manner" for two years after termination of their employment with National Grants.  National Grants personnel must also acknowledge the "immediate and irreparable injury" to National Grants, and consent "to entry of an injunction, without the need to post a bond, prohibiting any conduct . . . in violation of [the] Agreement."

62.    Defendants knew of these contractual and/or business relationships between National Grants and its personnel, and intentionally acted to disrupt those contractual and/or business relationships, without justification or privilege.

63.    Defendants, with full knowledge of the existence of National Grants' former personnel's agreements with, and duties and obligations to, National Grants, including without limitation the confidentiality provisions thereof, have intentionally interfered with National Grants' agreements with its personnel by inducing the breach of those duties and obligations.

64.    As a direct and proximate result of Defendants' wrongful conduct, National Grants' contractual and/or business relationships with its personnel have been disrupted and irreparably damaged.  To the extent Defendants have induced National Grants' personnel to breach their confidentiality agreements with, and duties and obligations to, National Grants, National Grants has lost control of its valuable and protectable trade secrets, trademarks, and copyrighted material, and Defendants have been enabled to unfairly compete thereby.

1   65.    Defendants' wrongful and intentional interference with National Grants'

2   contractual and/or business relationships with its personnel causes and will continue to cause

3   irreparable injury to National Grants, entitling National Grants to temporary, preliminary and

4   permanent injunctive relief prohibiting Defendants from interfering with said relationships.

5   National Grants lacks an adequate remedy at law, in that damages are difficult to ascertain and,

6   unless injunctive relief is granted as prayed for herein, Defendants will continue to injure

7   National Grants' existing and prospective employment and business relationships.

8   66.    As a direct and proximate result of Defendants' intentional interference with

9   National Grants' contractual relationships, National Grants sustained and will continue to sustain

10   damages, the exact amount of which is difficult to calculate, and presently unknown, but will be

11   established according to proof at trial.

12   67.    At the time that Defendants committed the aforementioned acts of intentional

13   interference with contractual and/or business relations, Defendants were guilty of fraud,

14   oppression, malice and the willful and conscious disregard of the rights of National Grants in that

15   Defendants acted with a specific motive, purpose and intent to injure and oppress National

16   Grants, and defraud National Grants.    Defendants committed the aforementioned acts of

17   intentional interference with contractual and/or business relations with a conscious disregard of

18   the rights of National Grants. As a result, National Grants has been oppressed and injured and is

19   entitled to an award of punitive and exemplary damages in an amount to be proven at trial.

20   **SIXTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH PROSPECTIVE**

21   **ECONOMIC ADVANTAGE (Against All Defendants)**

22   68.    National Grants realleges and incorporates by reference each of the allegations

23   contained in paragraphs 1 through 67 above as though fully set forth herein.

24   69.    National Grants has economic relationships with its Speakers, Road Crew and

25   other personnel that promise future economic benefit to National Grants, in that it is only through

26   its personnel that National Grants can sell its products and services.

27   70.    National Grants also has a legitimate expectation of deriving future economic

28   benefit from its Speakers, Road Crew and other personnel they identify, recruit, hire and train,

RUSS, AUGUST & KABAT

2858-01 080403 ComplaintDynetech.doc                    15

1  and would be required to identify, recruit, hire and train replacements for all departing Speakers,

2  Road Crew and other personnel.

3    71.    Defendants knew of the economic relationships between National Grants and its

4  Speakers, Road Crew and other personnel, and the probable future economic benefit National

5  Grants would derive from those relationships.

6    72.    Defendants intentionally acted to disrupt those economic relationships, without

7  justification or privilege, and did disrupt those relationships, as alleged, constituting interference

8  with prospective economic advantage.

9    73.    As set forth above, Defendants have utilized intentional and improper methods to

10  disrupt National Grants' economic relationships with its personnel.

11    74.    Defendants have additionally tortiously interfered with National Grants' customer

12  base.  Defendants are aware of National Grants' target customer base and with that knowledge

13  have wrongfully sold in the same venues and via the same mediums as National Grants, all the

14  while using National Grants' trade secrets, personnel, and copyrighted materials.

15    75.    Defendants' conduct is wrongful, beyond the act of interference itself, due to

16  Defendants' independently wrongful acts of trademark infringement, unfair competition, false

17  and deceptive advertising, theft of trade secrets, and conversion, as set forth in this Complaint.

18    76.    As a direct and proximate result of Defendants' wrongful conduct, National

19  Grants' economic relationships with their personnel have been disrupted and irreparably

20  damaged.

21    77.    Defendants' wrongful and intentional interference with National Grants'

22  economic relationships with its actual or potential customers causes and will continue to cause

23  irreparable injury to National Grants, entitling National Grants to temporary, preliminary and

24  permanent injunctive relief prohibiting Defendants from interfering with said relationships.

25  National Grants lacks an adequate remedy at law, in that damages are difficult to ascertain and,

26  unless injunctive relief is granted as prayed for herein, Defendants will continue to injure

27  National Grants' existing and prospective employment and business relationships.

28

RUSS, AUGUST & KABAT

78.    As a direct and proximate result of Defendants' intentional interference with National Grants' economic relationships, National Grants has sustained and will continue to sustain damages, the exact amount of which is difficult to calculate, and presently unknown, but will be established according to proof at trial.

79.    At the time Defendants committed the aforementioned acts of intentional interference with prospective economic advantage, Defendants were guilty of fraud, oppression, malice and the willful and conscious disregard of the rights of National Grants in that Defendants acted with a specific motive, purpose and intent to injure and oppress National Grants, and defraud National Grants.    Defendants committed the aforementioned acts of intentional interference with prospective economic advantage with a conscious disregard of the rights of National Grants.    As a result, National Grants has been oppressed and injured and is entitled to an award of punitive and exemplary damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION: CONVERSION

### (Against All Defendants)

80.    National Grants realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 79 above as though fully set forth herein.

81.    Defendants' conduct, as aforesaid, was and is in furtherance of a scheme to obtain and convert to its own use and for its own gain the benefit of National Grants' presenters and proprietary methodology and confidential information, knowledge, and know-how, as more fully set forth above, and National Grants has been and continues to be damaged thereby.

82.    Accordingly, National Grants is entitled to recover the confidential and proprietary material and information converted by Defendants.

83.    As a direct and proximate result of Defendants' conversion of National Grants' proprietary methodology and confidential information, knowledge, and know-how, National Grants has sustained and will continue to sustain damages, the exact amount of which is difficult to calculate, and presently unknown, but will be established according to proof at trial.

84.    At the time Defendants committed the aforementioned acts of conversion, Defendants were guilty of fraud, oppression, malice and the willful and conscious disregard of

RUSS, AUGUST & KABAT

2858-01 080403 ComplaintDynetech.doc

17

COMPLAINT

1    the rights of National Grants in that Defendants acted with a specific motive, purpose and intent

2    to injure and oppress National Grants, and defraud National Grants.  Defendants committed the

3    aforementioned acts of conversion with a conscious disregard of the rights of National Grants.

4    As a result, National Grants has been oppressed and injured and is entitled to an award of

5    punitive and exemplary damages in an amount to be proven at trial.

6              **EIGHTH CAUSE OF ACTION: THEFT OF TRADE SECRETS**

7                 **(Cal. Civ. Code § 3426 *et seq.*) (Against All Defendants)**

8         85.    National Grants realleges and incorporates by reference each of the allegations

9    contained in paragraphs 1 through 84 above as though fully set forth herein.

10        86.    As set forth above, various of National Grants' confidential information,

11   including National Grants' processes, formulae, and materials relating to marketing and

12   scheduling of seminars are not generally known to, nor are they reasonably available to, National

13   Grants' competitors, or the public at large, and are "trade secrets" within the meaning of the

14   Uniform Trade Secrets Act ("UTSA").

15        87.    National Grants has expended substantial time, effort and financial and human

16   resources over the last nine years to develop these trade secrets, which cannot be easily acquired

17   or replicated by others.

18        88.    In the hands of a competitor, National Grants' trade secrets would allow a

19   competitor an opportunity to unfairly benefit from the substantial time, effort and financial and

20   human resources National Grants has expended in developing same.

21        89.    National Grants' trade secrets derive substantial, independent economic value

22   from not being generally known to the public, and in particular to National Grants' would-be

23   competitors, who could obtain economic value from such information.

24        90.    National Grants' processes, formulae, and materials relating to marketing and

25   scheduling of seminars have been consistently maintained as its trade secret.  Access to National

26   Grants' trade secrets is restricted, and all National Grants personnel are required to assume duties

27   and obligations to maintain as confidential any information regarding National Grants' National

28   Grants' processes, formulae, and materials relating to marketing and scheduling of seminars.

RUSS, AUGUST & KABAT

1   Accordingly, National Grants' trade secrets constitute protectable trade secrets pursuant to Civil

2   Code §3426.1(d).

3       91.     Through their relationships, contracts, and contacts with National Grants,

4   Defendants know that such confidential information constitutes trade secrets.

5       92.     Further, Defendants' misappropriation and theft raises the serious and imminent

6   threat of Defendants' continued use of National Grants' valuable trade secrets, allowing

7   Defendants to unfairly compete with National Grants.

8       93.     Defendants' use and threatened use of National Grants' trade secrets causes and

9   will continue to cause irreparable injury to National Grants, entitling National Grants to

10  temporary, preliminary and permanent injunctive relief prohibiting Defendants from

11  misappropriating or using National Grants' trade secrets, including requiring that Defendants

12  turn over to National Grants all materials constituting, reflecting or embodying National Grants'

13  trade secrets. National Grants lacks an adequate remedy at law, in that damages are difficult to

14  ascertain and, unless injunctive relief is granted as prayed for herein pursuant to California Civil

15  Code §3462.2, Defendants will continue to injure National Grants' existing and prospective

16  business, good will and reputation.

17      94.     National Grants has sustained and will continue to sustain damages as a direct and

18  proximate result of Defendants' prior and ongoing misappropriation of National Grants' trade

19  secrets, the exact amount of which is difficult to calculate, and presently unknown, but will be

20  established according to proof at trial.

21      95.     National Grants is informed and believes, and on that basis alleges, that

22  Defendants have obtained and will continue to obtain gains, profits and advantages as a result of

23  its misappropriation of National Grants' trade secrets.  The full extent of the gains, profits and

24  advantages Defendants have obtained by reason of such misconduct is difficult to calculate, and

25  presently unknown, but will be established according to proof at trial.  Pursuant to California

26  Civil Code §3426.3, National Grants is entitled to an order requiring that Defendants disgorge

27  such ill-gained profits and providing for such further relief as may be necessary to remedy

28

RUSS, AUGUST & KABAT

1 | Defendants' unlawful conduct, including a reasonable royalty for such use as Defendants have

2 | made of National Grants' trade secrets.

3 |      96.    National Grants is further informed and believes, and on that basis alleges, that

4 | Defendants willfully and maliciously misappropriated National Grants' trade secrets, such that

5 | National Grants is entitled to recover exemplary damages, not to exceed twice such actual

6 | damages as National Grants may establish at trial, pursuant to Civil Code §3426.3(c).

7 |      97.    Defendants' willful and malicious misappropriation of National Grants' trade

8 | secrets also entitle National Grants to recover their attorneys' fees and costs incurred herein from

9 | Defendants pursuant to Civil Code §3426.4.

10 | **NINTH CAUSE OF ACTION: UNFAIR COMPETITION**

11 | **(Cal. Bus. & Prof. Code § 17200 *et seq.*) (Against All Defendants)**

12 |      98. National Grants realleges and incorporates by reference each of the allegations

13 | contained in paragraphs 1 through 97 above as though fully set forth herein.

14 |      99. Defendants' conduct constitutes unfair competition and unlawful, unfair, fraudulent

15 | or deceptive business practices under Business & Professions Code §§ 17200 *et seq*.

16 |      100.    Defendants' conduct is fraudulent, in that their actions are likely to deceive the

17 | public, all as more fully set forth above.

18 |      101.    National Grants has suffered and will continue to suffer irreparable harm and

19 | injury as a result of Defendants' unfair, unlawful and fraudulent acts, which entitles them to

20 | injunctive relief as prayed for herein pursuant to California Business & Professions Code §

21 | 17203.

22 |      102.    National Grants is informed, believes and based thereon alleges that Defendants

23 | have been unjustly enriched and have obtained gains, profits and advantages as a result of their

24 | acts of unfair competition to the detriment of National Grants. Accordingly, National Grants is

25 | entitled to the return of gains, profits and advantages that would have otherwise been National

26 | Grants' but for Defendants' acts of unfair competition in the form of restitution, the exact

27 | amount of which is difficult to calculate, and presently unknown, but will be established

28 | according to proof at trial.

RUSS, AUGUST & KABAT

1    **TENTH CAUSE OF ACTION: CONSPIRACY AND AIDING AND ABETTING (Against**

2    **All Defendants)**

3       103.    National Grants realleges and incorporates by reference each of the allegations

4    contained in paragraphs 1 through 102 above as though fully set forth herein.

5       104.    On information and belief, Defendants have combined and conspired to commit

6    the acts described above as part of a scheme, *inter alia*, to misappropriate National Grants'

7    confidential information, including written training and reference materials, operational data,

8    systems, methodologies, and take and use for their own benefit National Grants' Road Crew,

9    Speakers, and other contractors.

10       105.    Defendants are engaging in the scheme together in a coordinated manner, for their

11    mutual benefit.

12       106.    Defendants have been aiding, abetting, and assisting each other in each of the

13    unlawful acts described above, and National Grants has been and continues to be damaged

14    thereby.

15       107.    As a direct and proximate result of Defendants' conspiracy, and all acts taken in

16    furtherance thereof, National Grants has sustained and will continue to sustain damages, the

17    exact amount of which is difficult to calculate, and presently unknown, but will be established

18    according to proof at trial. As members of the conspiracy, each Defendant is jointly and

19    severally liable for all damages incurred by National Grants.

20

21

22                  **PRAYER FOR JUDGMENT**

23    WHEREFORE, National Grants prays that this Court grant it the following relief:

24    On Its First Cause of Action

25       1.      Temporary, preliminary and permanent injunctive relief,

26       2.      Impounding of Defendants' infringing materials,

27       3.      Disgorgement of Defendants' profits,

28       4.      Compensatory damages,

RUSS, AUGUST & KABAT

5.    Statutory damages, and

6.    An award of attorneys' fees.

On Its Second Cause of Action

1.    Temporary, preliminary and permanent injunctive relief,

2.    Disgorgement of Defendants' profits,

3.    Treble damages, and

4.    An award of attorneys' fees.

On Its Third Cause of Action

1.    Temporary, preliminary and permanent injunctive relief,

2.    Disgorgement of Defendants' profits,

3.    Treble damages, and

4.    An award of attorneys' fees.

On Its Fourth Cause of Action

1.    Temporary, preliminary and permanent injunctive relief,

2.    Disgorgement of Defendants' profits,

3.    Treble damages, and

4.    An award of attorneys' fees.

On Its Fifth Cause of Action

1.    Temporary, preliminary and permanent injunctive relief,

2.    Compensatory damages,

3.    Punitive and exemplary damages.

On Its Sixth Cause of Action

1.    Temporary, preliminary and permanent injunctive relief,

2.    Compensatory damages,

3.    Punitive and exemplary damages.

On Its Seventh Cause of Action

1.    Return of all confidential and proprietary material and information converted by Defendants,

RUSS, AUGUST & KABAT

2.      Compensatory damages, and

3.      Punitive and exemplary damages.

On Its Eighth Cause of Action

1.      Temporary, preliminary and permanent injunctive relief,

2.      Disgorgement of Defendants' profits,

3.      Compensatory damages,

4.      Exemplary damagers, not to exceed twice National Grants' actual damages, and

5.      An award of attorneys' fees.

On Its Ninth Cause of Action

1.      Restitution of all of Defendants' gains, profits and advantages as a result of their acts of unfair competition.

On Its Tenth Cause of Action

1.      Compensatory damages, and

2.      Punitive and exemplary damages.

On All Causes of Action

1.      Pre and post-judgment interest,

2.      Costs of suit,

3.      An award of attorneys' fees, and

4.      Such other relief as the Court deems just and proper.

DATED:  April 3, 2008

RUSS, AUGUST & KABAT
Larry C. Russ
Eric B. Carlson
Robert E. Satterthwaite


By:      /s/  Robert E. Satterthwaite
Robert E. Satterthwaite
Attorneys for Plaintiffs Proven Methods
Seminars, LLC and Proven Methods
Customer Service, LLC, doing business
together as National Grants Conferences

RUSS, AUGUST & KABAT